Sherman *v.* Consolidated Dental Manufacturing Company, Appellant.

*Master and servant—Expenses of business—Manager.*

Prima facie the owner of a business is chargeable with its expenses, and an employee, however large his powers and authority, is not liable for such expenses unless made so by the provisions of his contract.

An owner of a business employed a manager under a contract which contained no express provision as to expenses. The contract contained the following provisions: "IV. The party of the first part agrees to pay to the party of the second part as compensation for his services in selling its goods, a sum of money equal to the difference between the list and trade prices of every article so consigned to him. V. The party of the second part agrees to send to the party of the first part . . . . a monthly statement showing the sales . . . . and to remit with said statement a check or draft for an amount representing the trade price of all goods sold during said preceding month as shown by said statement." For two years the manager had deducted expenses in his accounts without objection by his employer. *Held,* both by the terms of the contract itself as properly construed, and by the construction which the parties by their actions had placed upon it, that the manager was not liable for the expenses of the business.

Argued Jan. 7, 1902. Appeal, No. 119, Jan. T., 1901, by defendant, from order of C. P. No. 3, Phila. Co., June T., 1899, No. 914, dismissing exceptions to report of referee in case of Charles E. Sherman v. Consolidated Dental Manufacturing Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Assumpsit for a balance alleged to be due under a contract in writing.

The case was referred to E. Hunn Hanson, Esq., under the act of May 14, 1874.

The principal question before the referee was whether the plaintiff should bear the expenses of a business conducted under an agreement in writing between the parties. On this subject the referee found the following facts :

By a written contract dated December 31, 1895, the plaintiff entered into the employment of the defendant company as a traveling salesman, for which service he was to receive

$40.00 a week, and a percentage on all sales over a sum mentioned, the employer undertaking to pay all of the expenses of the employee in and about the employment.

In 1897 a new agreement was prepared, then read by the parties without comment or objection and executed as follows:

"This agreement, made this 14th day of June, 1897, by and between the Consolidated Dental Manufacturing Company (a corporation organized and existing under the laws of the state of New York), party of the first part, and Charles E. Sherman, of Philadelphia, Pa., party of the second part, witnesseth:

"I. The party of the first part hereby constitutes and appoints the party of the second part as manager of its branch office in Philadelphia, Pa., for the sale of teeth and dental goods.

"II. The party of the second part hereby accepts said appointment and agrees to use his best endeavors to promote the sale of teeth and dental goods at Philadelphia, Pa., and elsewhere in that vicinity.

"III. The party of the first part hereby agrees to immediately consign to the party of the second part a full stock of teeth and dental goods and also agrees to consign to said party of the second part such further lots of teeth and dental goods as the needs of the business may require.

"IV. The party of the first part agrees to pay to the party of the second part as compensation for his services in selling its goods a sum of money equal to the difference between the list and trade prices of every article so consigned to him.

"V. The party of the second part agrees to send to the party of the first part on or about the first of every month during the continuance of this agreement a monthly statement showing the sales made during the preceding month by the party of the second part of the goods belonging to the party of the first part in his possession and agrees to remit with said statement a check or draft for an amount representing the trade price of all goods sold during said preceding month as shown by said statement.

"VI. The party of the second part hereby agrees to take such care of goods of the party of the first part as any reasonable man would do and also agrees in making sales of said goods that such sales shall be made only to such person or persons as are responsible.

Upon the agreement was the indorsement "Consignment agreement," and upon its execution the contract of December 31, 1893, first mentioned, ended.

By a lease dated May 22, 1897, in which the Philadelphia Trust, Safe Deposit and Insurance Company, trustee, was lessor, and company defendant, acting through its president, the lessee, the latter took possession of a branch office, and placed the plaintiff in charge as manager, and from the last-mentioned date to June 7, 1899, he gave his exclusive attention to its business.

In reply to the question what other and additional consideration was agreed upon between the company defendant and Sherman, Bultman testified that Sherman was to pay all the expenses that attended doing the business in Philadelphia and he was also to pay interest on the moneys that were invested there by the defendant company.

Sherman, upon re-examination, distinctly and in detail denied that there was any other consideration agreed upon than that in the contract of June 14, 1897.

The characters of the business of the Philadelphia branch was clearly and distinctly expressed upon its books and papers as that of a branch with its home office, and when Sherman's name appeared it was as manager, and there was no charge against him individually. Sherman was ignorant of bookkeeping, and from time to time when it was not known how entries should be made he requested aid from the defendant company, at times by letter and at times verbally, in answer to which he got written instructions or was visited by one of the bookkeepers or officers of the company, who made or directed the proper entries. The moneys received from the sales of goods were deposited by Sherman in bank to an account with the Philadelphia branch office, and out of these moneys he deducted the rent of the office and its other expenses, and took on account of his compensation $40.00 a week, and (generally) each week transmitted the balance by check to the defendant company. In this bank account there was also deposited the rents received by Sherman from the lessees of 1413 Filbert street, to whom the company had demised. Excepting the expenses and that taken on account of compensation, Sherman transmitted to the defendant company all of the trade prices

of the goods sent him, and the amount of these expenses appeared in the summary of business sent each month from Philadelphia to New York.

The referee reported in favor of the plaintiff in the sum of $14,345.19.

Exceptions to the report of the referee were overruled by the court.

*Error assigned* was in overruling exceptions to referee's report.

*John Hampton Barnes*, for appellant.—The contract was in effect a conditional sale of the goods by the defendant to the plaintiff: Keystone Watch Case Co. v. Fourth Street Nat. Bank, 194 Pa. 535; McCullough v. Porter, 4 Watts & Sergeant, 177.

The referee should have found from the terms of the contract and the construction given thereto by the parties, that the defendant had no concern with the cost of conducting the business in Philadelphia.

When a contract is capable of two different interpretations, that which the parties themselves have put upon it and acted upon, a court will follow, because it is the true intent and meaning of the parties which are to be sought for in the language they use: Gass's Appeal, 73 Pa. 39, 46; New York Tartar Co. v. French, 154 Pa. 273; People's Nat. Gas Co. v. Braddock Wire Co., 155 Pa. 22.

*Joseph W. Kenworthy* and *V. Gilpin Robinson*, for appellee.

OPINION BY MR. JUSTICE MITCHELL, May 19, 1902:

The substantial issue between the parties is as to which shall be chargeable with the expenses of the business. The contract provided:

" IV. The party of the first part agrees to pay to the party of the second part as compensation for his services in selling its goods a sum of money equal to the difference between the list and trade prices of every article so consigned to him.

" V. The party of the second part agrees to send to the party of the first part . . . . a monthly statement show-

ing the sales . . . . and to remit with said statement a check or draft for an amount representing the trade price of all goods sold during said preceding month as shown by said statement." The apparent conflict between these two clauses gives rise to the controversy. If plaintiff is bound to send the full trade price to defendant without deduction for expenses, then he will not be receiving for his services the entire difference between the trade price and the list price as stipulated in clause fourth, while on the other hand if he deducts the expenses, he will not be sending to defendant the full trade price called for by clause fifth. To solve this difficulty we must resort to the language and intent of the whole instrument.

The contract contains no express provision as to expenses. But the business was distinctly and exclusively the defendant's. The defendant appoints plaintiff " manager of its branch office at Philadelphia," and agrees to consign goods to him, which however are to remain the property of defendant, and it is expressly stipulated that plaintiff shall " take such care of the goods of the party of the first part (defendant) as any reasonable man would do," and then follow the provisions for " compensation for services " and " rendering statements " already quoted. Prima facie the owner of a business is chargeable with its expenses, and there is nothing in the agreement to take this case out of the general rule. Plaintiff was a mere employee, called manager, but having no ownership or direct interest in the business itself, except so far as the amount of the sales controlled the amount of his compensation. An employee, however large his powers and authority, is not liable for the expenses of the business unless made so by the provisions of his contract. The learned referee was correct in his construction of the agreement.

Even if this were more doubtful than it is, the course of dealings between the parties would be conclusive in favor of the same construction. The referee finds that during the two years that the arrangement lasted, plaintiff sent to defendant monthly accounts of " cash receipts " and " cash payments " on blanks furnished by the defendant itself for the purpose, in which under the latter head appeared items " for expenses, for salaries, for rent, for gas lighting," etc., and plaintiff " generally each week transmitted the balance " (after deducting the items

for expenses as above) " by check to defendant." These accounts and remittances were accepted by defendant without objection. The parties themselves thus gave a practical demonstration of their mutual understanding of the agreement, which neither one can now be allowed successfully to dispute.

Judgment affirmed.